## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Shari B.,[1]                                                    Case No. 22-cv-1539 (DJF)

            Plaintiff,

v.                                                                        **ORDER**

Kilolo Kijakazi,

            Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shari B. ("Plaintiff") seeks judicial review of the final decision ("Decision") of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") ("Decision").  This matter is presented for decision by the parties' cross motions for summary judgment.[2]  For the reasons given below, the Court denies the Commissioner's motion for summary judgment (ECF No. 14), grants in part and denies in part Plaintiff's motion for summary judgment (ECF No. 12), and remands this matter for further administrative proceedings consistent with this Order.

### Background

**I.      Plaintiff's Claim**

Plaintiff applied for Disability Insurance Benefits ("DIB") on December 13, 2019 (Soc.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

Sec. Admin R. (hereinafter "R.") 71.)[3]  At that time, she was a 44-year-old woman, who previously worked as a postal clerk. (R. 22.)  Plaintiff alleged she became disabled on July 25, 2019 as the result of:  rheumatoid arthritis; stage 2b breast cancer; acute kidney disease; anxiety; ascending aorta; diabetes; and interstitial cystitis. (R. 60.)  At Plaintiff's hearing, her attorney also noted she was recently diagnosed with osteoporosis and argued this new condition would further limit her physical activity.  (R. 35.)

## II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i).  The

---

[3] The Social Security administrative record (R.) is filed at ECF No. 9. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

claimant must then establish that she has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III.   Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 88–92) and on reconsideration. (R. 96–98.) On January 13, 2023, at Plaintiff's request (R. 99–100), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (*see* R. 29–59). Plaintiff was represented by an attorney, and Plaintiff and a vocational expert ("VE") testified at the hearing (*see id.*). After the hearing, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 25, 2019. Next, the ALJ determined Plaintiff

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted. See 20 C.F.R Part 404, Subpart P, App. 1.

had the following severe impairments:  inflammatory arthritis and diabetes mellitus. (R. 14–15.)
The ALJ further found Plaintiff had non-severe impairments, including anxiety and breast cancer,
which was in remission. The ALJ found none of these impairments met or were medically equal
to any impairment in the Listing, however.  (R. 16.)  She then determined that Plaintiff:

> has the residual functional capacity to perform less than the full range of sedentary
> work as defined in 20 CFR 404.1567(a) except: [Plaintiff] is able to lift and carry
> 10 pounds occasionally and less than 10 pounds frequently. The [Plaintiff] is able
> to sit up to 8 hours out of an 8-hour workday with normal breaks. The [Plaintiff] is
> able to stand or walk up to 2 hours out of an 8-hour workday with normal breaks.
> The [Plaintiff] can never climb ladders, scaffolds or ropes. The [Plaintiff] can only
> occasionally balance (as defined in the SCO), stoop, kneel, crouch, crawl and climb
> ramps or stairs. The [Plaintiff] is able to frequently handle and finger. The
> [Plaintiff] can tolerate only occasional exposure to work around hazards such as
> dangerous moving machinery and unprotected heights.

(R. 16.)

In reaching this determination, the ALJ took into account two function reports and
Plaintiff's testimony at the hearing regarding her conditions, her alleged limitations, her job
history, and her activities of daily life.  (R. 17-20.)  The ALJ also took into consideration her
medical records and treatment history.  (R. 18-19.)

The ALJ then evaluated the medical experts' opinions.  The ALJ determined that the
opinion of Plaintiff's rheumatologist, Dr. Megan Scheibe, was unpersuasive.  (R. 20.) Dr. Scheibe,
who saw Plaintiff twice prior to completing a form in support of Plaintiff's claim for short-term
disability benefits, determined Plaintiff could sit for one hour out of eight, could never perform
postural activities, and could never reach or perform manipulation activities.  (*Id.*)  Dr. Scheibe
did not offer an opinion on how often Plaintiff could stand or walk. (*Id.*)  The ALJ found Dr.
Scheibe's opinion was inconsistent with her conservative treatment recommendations and
disproportionate with the "normal" physical examinations noted in Plaintiff's medical record.  (*Id.*)

The ALJ also found the state agency medical consultants' opinions to be unpersuasive, rejecting their determination that Plaintiff was capable of performing a range medium work activity and finding instead that she is more reasonably limited to sedentary work. (*Id.*) The ALJ cited Plaintiff's persistent complaints, objective medical evidence of her rheumatological symptoms, and evidence that Plaintiff's activities of daily living were reduced. (*Id.*) The ALJ determined that evidence admitted at the hearing level showed Plaintiff had greater postural and environmental limitations than previously determined, but she afforded the state agency medical consultants' opinions "some weight" to the extent they supported the ALJ's findings regarding Plaintiff's RFC. (R. 21.)

Next, the ALJ found persuasive the state agency psychological consultants' assessments that Plaintiff's mental health limitations are "non-severe". (R. 21.) Citing support in the medical record, the ALJ afforded "great weight" to their findings that Plaintiff can: understand, remember and carry out simple tasks; relate on a superficial basis with co-workers and supervisors; attend to tasks for sufficient periods to complete them; and manage the stress involved with simple work. (*Id.*)

Based on Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff could not return to her past work, but that there were other jobs Plaintiff could perform that exist in significant numbers in the national economy, including: printed circuit board taper (4,000 jobs nationally); assembler (6,000 jobs nationally); and printed circuit board screener (8,000 jobs nationally). (R. 22–23.) In light of these findings, the ALJ concluded Plaintiff was not disabled and denied her claim. (R. 23). The Appeals Counsel denied Plaintiff's request for review of the ALJ's decision (R. 1–3), and this lawsuit followed.

**DISCUSSION**

I. **Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  But this "threshold … is not high." *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review).  At minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates.  She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion," and "[t]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7; *Lee R. v. Kijakazi*, No. CV 20-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge"

between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.     Analysis

Plaintiff raises challenges to the ALJ's determinations in three broad areas.  First, she raises several challenges to the ALJ's analysis of the medical evidence and the RFC determination: (i) that the ALJ committed legal error by failing to include any findings relative to Ms. Braunschweig's ability to engage in reaching; (ii) that the ALJ's findings relative to Plaintiff's ability to engage in handling and fingering are not based on substantial evidence; and (iii) that the ALJ's finding that she can sit for eight hours a day with normal breaks is not supported by substantial evidence. She then challenges the ALJ's decision to discount the medical opinion of Dr. Scheibe, her treating rheumatologist.  She further argues that the jobs the VE identified do not exist in sufficient numbers in the national economy.  And lastly, she argues the ALJ erred at step two of the analysis by failing to determine that her osteoporosis and anxiety are severe medical impairments.

While the Court upholds the majority of the ALJ's findings, the Court concludes the ALJ's opinion is deficient in that it: (1) failed to provide a reasonably supported explanation for the determination that Plaintiff can sit for 8 hours in an 8-hour workday; (2) concluded without sufficient support that significant jobs exist in the national economy that Plaintiff can perform; and (3) does not address at all whether Plaintiff's recent osteoporosis diagnosis was a severe, medically determinable impairment or had any impact on her RFC.  The Court accordingly reverses the ALJ's decision and remands this matter for further administrative proceedings consistent with this opinion.

**A.       The ALJ's RFC Determination**

**i.       Ability to Engage in Reaching**

Plaintiff first argues that the ALJ committed legal error by failing to include any findings relative to her ability to engage in reaching in making the RFC determination.  As this is equivalent to arguing the ALJ committed legal error by failing to develop the record, the "inquiry is whether [Plaintiff] was prejudiced or treated unfairly by how the ALJ did nor did not develop the record; absent unfairness or prejudice, [the Court] will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993); *see also Eaton v. Kijakazi*, 854 F. App'x 109 (8th Cir. July 31, 2021) (per curiam) (citing *Onstad* for this proposition).

Plaintiff argues she was prejudiced by the ALJ's analysis because:  she repeatedly complained of pain, numbness and swelling, particularly in her hands and wrists; her rheumatologist opined that she should never engage in reaching activities above or below shoulder level; and her counsel testified to her difficulties using her hands, arms and fingers at the hearing (ECF No. 13 at 6–7).  But the ALJ specifically stated in her opinion that:  Plaintiff "complained of fine motor deficits, and deficits in repetitive motion[;]" rejected her rheumatologist's opinion for the reasons discussed below; reviewed her medical history of joint pain, including her wrists and hands, taking note of her diagnosis and their progression; and reviewed her daily activities. (R. 17–19.)  As it is clear from the ALJ's opinion that she examined Plaintiff's treating physician's opinion and the medical evidence necessary to determine Plaintiff's ability to engage in reaching, there is no unfairness at play here, and Plaintiff was not prejudiced by the ALJ's development of the record with respect to reaching.  The ALJ accordingly did not commit legal error requiring remand with respect to this issue.

ii.     **Ability to Engage in Handling and Fingering**

Next, Plaintiff argues the ALJ's opinion regarding her ability to engage in handling and fingering is not supported by substantial evidence.  But the threshold for substantial evidence is not high—it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinney*, 228 F.3d at 863 (quoting *Consol. Edison Co.*, 305 U.S. at 229). Plaintiff acknowledges that the ALJ, in reaching her RFC determination, considered:  Plaintiff's medical history and her physical examinations; changes to her medications; the stability of her symptoms across multiple appointments; her wrist and hand pain; her daily activities; and her failure to check her blood sugar at home consistently and follow up with recommendations and lab testing (ECF No. 13 at 7–8).  Plaintiff argues the ALJ's assessment of the record was unfair in that: (1) the ALJ characterized Plaintiff as able "attend to her own personal needs, [do] her own laundry, shop[] with assistance from her son," but no longer gardened or did any of her other favorite activities such as hiking (R. 15), when, in Plaintiff's view, the record showed she had difficulty caring for herself; and (2) the ALJ failed to adopt the finding of Plaintiff's rheumatologist that she should never engage in handling and fingering.

With respect to Plaintiff's first argument, the Court observes that the ALJ accurately cited Plaintiff's own function report when characterizing her ability to care for herself.  (R. 15, citing R. 248–261, reporting that she makes her son breakfast, does the dishes, laundry, vacuums, cooks dinner, mops, and can shop for groceries, laundry, hygiene and pet supplies.)  The ALJ's findings also were consistent with Plaintiff's own testimony.  (*See, e.g.*, R. 41, Plaintiff responding "Yes" to the ALJ's question asking whether she takes "care of all [her] own personal needs during the day, feeding, dressing, bathing?".)  Although Plaintiff testified she needs to take breaks when

caring for herself (*see, e.g.*, R. 43, noting that she needs to take breaks when brushing her hair because of hand cramps), and needs assistance with certain activities (*see, e.g.*, R. 51, noting her son goes grocery shopping with her to lift the big bags of dog food she purchases), none of this testimony is inconsistent with the ALJ's findings regarding her ability to care for herself.

Moreover, Plaintiff's testimony regarding her daily routine was only one piece of evidence the ALJ relied upon in reaching the RFC determination regarding Plaintiff's ability to engage in handling and fingering.  The ALJ took into consideration that, prior to Plaintiff's alleged disability date, she had been diagnosed with seronegative rheumatoid arthritis and had minimal enhancing synovitis to the wrist and MCP joints of the right hand with a mild diagnosis. (R. 18.)  During the disability period, she reported less than an hour of morning stiffness. (R. 19.)  The ALJ found the longitudinal medical record established good strength, minimal synovitis and tenderness in examinations, and mostly normal physical examinations as it pertains to her inflammatory arthritic condition. (*Id.*)  The ALJ further noted that Plaintiff's symptoms were relatively stable while she was on medication except when she tried to change her regimen, that Plaintiff has not sought assistance from vocational rehabilitation or job services for job training to accommodate her impairments, and that she has not looked for other work.  (R. 19–20.)  The record also reflected her doctors were attempting to decrease her pain-related medication, indicating a conservative course of care (R. 20).  In light of the multiple logical grounds the ALJ provided for reaching this portion of the RFC determination, to accept Plaintiff's argument would be to improperly reweigh the evidence.  The Court will not reverse the ALJ's decision on this basis.

Plaintiff's second argument as to why the RFC determination regarding fingering and handling is erroneous is that her rheumatologist said she should never reach or perform manipulative activities.  But the ALJ explicitly found Dr. Scheibe's opinion was unpersuasive, and

for the reasons discussed further below, the ALJ's analysis of Dr. Scheibe's opinion was adequately supported. Accordingly, the Court affirms the ALJ's decision regarding Plaintiff's ability to engage in fingering and handling.

### iii. Plaintiff's Ability to Sit for Eight Hours a Day

Plaintiff next argues the ALJ's RFC determination that Plaintiff can sit for 8 hours in an 8-hour workday with normal breaks lacks substantial evidence. With respect to this argument, the Court finds there are material deficiencies in the ALJ's opinion.

Plaintiff testified at the administrative hearing that if she sits for too long, her "left hip bothers" her and her "knees start to lock up and so do [her] ankles." (R. 39.) She further stated that she enjoys doing puzzles, but it takes her a long time to complete because it involves "a lot of sitting." (R. 42.) She also specifically testified that she believed she could only sit in an upright position for roughly "15 minutes." (R. 48–49.) And even if she was to take breaks every 15 minutes, she testified that she could only sit for a total of "a couple of hours." (R. 49.)

Plaintiff's testimony is at least partially supported by the findings of the medical experts in this case. Dr. Scheibe determined Plaintiff could sit for only one hour in an 8-hour day (R. 20). The state agency medical consultants, Drs. Ann Fingar and Gregory Salmi—whose opinions the ALJ found to be insufficiently limiting—determined Plaintiff could only sit for 6 hours in an 8-hour day with normal breaks. (R. 66, 82.) None of the medical experts believed Plaintiff could sit for as many as 8 hours as the ALJ's RFC reflects.

And while the ALJ analyzed the opinions of each of these doctors and found them "unpersuasive," her analysis with respect Drs. Fingar and Salmi appears to be inconsistent with her RFC determination. Drs. Fingar and Salmi concluded Plaintiff could engage in a range of medium work, but the ALJ rejected that conclusion and more restrictively limited Plaintiff to light

work.  In reaching her decision, the ALJ found these doctors' opinions were "not supported by [Plaintiff's] reduced activities of daily living[,]" (R. 20), and noted that they "did not have access to the full longitudinal record through the hearing date and did not have the advantage of seeing" Plaintiff testify to her subjective complaints, (R. 21).  The ALJ thus credited Plaintiff's subjective testimony and found her more limited than the state agency consultants' opinions suggest, but nonetheless concluded without explanation that Plaintiff was able to sit for a full 8-hour day.

The ALJ pointed to no evidence in the record supporting her determination that Plaintiff could sit for 8 hours in an 8-hour day with normal breaks, and the medical records the ALJ did cite establish potential support for Plaintiff's assertion that her sitting ability is limited.  (*See* R. 20, citing, for example, Exhibit 16F (R. 831-895), which includes findings that:  the doctor "recommended continued activity modification as she does feel symptomatically worse without adequate rest" (R. 835); "her quality of life is significantly better since she quit working" (*id.*); her "left hip [was] starting to bother her more" (R. 840); and she "[s]ees pain management for hip injections." (*id.*)).  And though the ALJ at least acknowledged Plaintiff's subjective allegations of pain in her left hip when sitting (R.17), she entirely failed to mention one of Plaintiff's "longitudinal records through the hearing date"—her recent diagnosis of osteoporosis in her left femoral neck (where Plaintiff described experiencing pain in when sitting), and osteopenia in her lumbar spine.  (*See* R. 35, 771–72.)

The Commissioner failed to address these inconsistencies in her arguments to the Court. Although the Commissioner acknowledged Plaintiff's challenge to the ALJ's RFC determination that Plaintiff could sit for eight hours, she exclusively cited to medical evidence and discussions from the ALJ's opinion regarding Plaintiff's shoulders, elbows, hands, and wrists.  These citations support the ALJ's determination regarding Plaintiff's ability to engage in reaching, handling and

fingering, but include no references to any portion of the ALJ's opinion or Plaintiff's medical records regarding Plaintiff's back, hips or general ability to sit.  (*See* ECF No. 15.)

For these reasons, the ALJ's opinion fails to create a logical bridge from which the Court can understand how she reached the RFC determination that Plaintiff can sit for 8 hours in an 8-hour day.  The Court accordingly concludes remand is warranted to rectify this deficiency.  *See, e.g.*, *Holdeman v. Kijakazi*, No. 20-cv-729 (NKL), 2021 WL 6062368, at *8 (W.D. Mo. Dec. 22, 2021) (remanding where the ALJ stated that a doctor's opinion did not go far enough in certain respects, but offered no explanation for why the ALJ deviated from the doctor's opinion to broaden the plaintiff's RFC in other respects); *Porter v. Berryhill*, 4:17-cv-72 (NKL), 2018 WL 1183400, at *12-13 (W.D. Mo. Mar. 7, 2018) (remanding when the ALJ afforded a medical opinion "some weight" but offered no explanation as to why only certain limitations were incorporated in the RFC). On remand, the ALJ should fully explain the rationale for her conclusions regarding Plaintiff's ability to sit with citations to the record.

## B.      Persuasiveness of Treating Physician Opinion

Plaintiff next argues the ALJ should have credited the opinion of Plaintiff's treating physician, Dr. Scheibe.  Dr. Scheibe's opinion appears in a checked box form for short-term disability benefits, which indicates Plaintiff:  could sit for 1 hour out of 8; could never perform postural activities; and could never reach or perform manipulation activities (*see* R. 896–97).  The Court finds no legal error in the ALJ's analysis and conclusion that Dr. Scheibe's opinion was unpersuasive.

Following changes to the applicable regulations, an ALJ is no longer required to defer to a treating or examining medical provider so long as the ALJ applies certain factors in determining the persuasiveness of the provider's opinion. *See* 20 C.F.R. § 404.1520c(a). These factors are:

(1) Supportability
(2) Consistency
(3) Relationship with the claimant (which includes)
      (i) Length of the treatment relationship
      (ii) Frequency of examinations
      (iii) Purpose of the treatment relationship
      (iv) Extent of the treatment relationship
      (v) Examining relationship
(4) Specialization
(5) Other factors (a catch all)

*Id.* at §§ 404.1520c(a)-(c), 416.920c(a)-(c).  The two most important factors for the ALJ to consider are supportability and consistency. *Id.* at § 404.1520c(b)(2).

In this case, the ALJ found Dr. Scheibe's determinations unpersuasive after:  (1) noting that Dr. Scheibe had only seen Plaintiff twice when the form was completed, and that Plaintiff was present when she filled it out, *see Marie v. Kijakazi*, 20-cv-2295 (LIB), 2022 WL 1715192, at *8 (D. Minn. Mar. 31, 2022) (finding decision to reject physician's opinion was supported by substantial evidence, in part, because the physician only examined the plaintiff once); (2) finding the limitations Dr. Scheibe imposed were inconsistent with Dr. Scheibe's conservative course of care—specifically, her decision to have Plaintiff trial ceasing treatment with Methotrexate and Enbrel, *see Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (finding ALJ's decision to discredit a treating physician's opinion persuasive based, in significant part, on plaintiff's "relatively conservative course of treatment");  and (3) finding Dr. Scheibe's imposed limitations were inconsistent with the relatively normal findings from Plaintiff's physical examinations documented in the medical record (R. 20).

In conducting her analysis of Dr. Scheibe's opinion, the ALJ plainly considered each of the factors set forth in the regulations: its inconsistency with the medical record and Plaintiff's conservative course of treatment with Dr. Scheibe; Dr. Scheibe's relationship with Plaintiff—involving only two examinations; and Dr. Scheibe's area of specialty. The Court cannot play

doctor and reweigh the medical evidence, and since the ALJ took these factors into account in evaluating Dr. Scheibe's opinion, the Court does not find legal error in the ALJ's assessment of Dr. Scheibe's opinion.

### C.      The Number of Jobs in the National Economy

Plaintiff further challenges the ALJ's decision at step five of the analysis.  At step five, the Commissioner must prove that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 42 U.S.C. § 423 (d)(2)(A).  "'[S]ignificant numbers in in the national economy' as applied in the context of a Social Security claim is a specific term of art[.]" *Britton v. Berryhill*, 4:17-cv-1956 (DDN), 2018 WL 4332062, at *6 (E.D. Mo. Sept. 11, 2018) (quoting 42 U.S.C. § 423 (d)(2)(A)). "Work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* (citations and quotations omitted); *see* 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.").

The Eighth Circuit "ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).  But there is a split among courts within the Eighth Circuit on how to take this "common sense" approach.  The District of South Dakota, relying in part on the Seventh Circuit's decision in *Barrett v. Barnhart*, 368 F.3d 691 (7th Cir. 2004), "has repeatedly held that VE testimony solely concerning national job numbers for DOT occupations is insufficient to carry the Commissioner's burden at step five of the sequential analysis; there must be direct evidence of a significant number of jobs either in the claimant's 'region' or in 'several regions.'" *Alice T. v. Kijakazi*, 8:21-cv-14, 2021 WL 5302141, at *16 (D. Neb. Nov. 15, 2021) (collecting

cases).  Though not strictly applying this test, in *Johnson v. Chater* the Eighth Circuit held the Commissioner had met her burden when the VE identified 200 jobs locally and 10,000 jobs nationally, and the jobs the VE identified were merely a subsample of a larger category of jobs the plaintiff could perform. 108 F.3d 178, 180 (8th Cir. 1997).[5] *See also Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (finding that 500 jobs in the regional economy constitutes a significant number of jobs).

In contrast, the Eastern District of Missouri, relying in part on the Ninth Circuit decision in *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014), takes the approach that "evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country."  *Hayden v. Saul*, No. 4:19-cv-187 (SPM), 2020 WL 888002, at *10-12 (E.D. Mo. Feb. 24, 2020) (emphasis supplied) (finding a total of 200,000 jobs nationally for work as a product inspector, assembler, or packer was a significant number) (collecting cases); *see also Gutierrez,* 740 F.3d at 528-29 (finding it was a "close call" whether 25,000 jobs nationally constituted work existing in significant numbers in several regions of the country).  At least one court in the District of Minnesota has held that 20,500 jobs in the national economy constitutes a significant number.  *See Nicolas C. J. v. Kijakazi*, 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *25 (D. Minn. Jan. 20, 2022) (citing *Johnson*, 108 F.3d at 180), *report and recommendation adopted*, 2022 WL

---

[5] *Johnson* is often cited for the proposition that the Eighth Circuit has held that 10,000 jobs nationally *per se* constitutes a significant number.  *See, e.g.*, *Gutierrez*, 740 F.3d at 529.  However, *Johnson* is clearly predicated in part on the 200 local jobs identified and the fact that the jobs and figures identified "were merely representative of a larger category of jobs that [the plaintiff] could perform[.]"  180 F.3d at 180.  The court in *Johnson* did not address whether 10,000 jobs constitutes a significant number of jobs in the national economy *per se.  See id.* at 180 & n.3.

807605 (D. Minn. Mar. 17, 2022).  Based on the Court's survey of case law from across the country, many courts appear to draw the line between a "significant" and an insignificant number of jobs in the national economy—without evidence of the number of jobs available locally—at around 20,000 jobs.  *See, e.g.*, *John C. v. Saul*, 2021 WL 794780, at *5 (C.D. Ill. Mar. 2, 2021) (holding 20,000 jobs nationally was not significant, based on a summary of district court decisions from the Seventh Circuit finding only one court held less than 20,000 national jobs (17,100 jobs) was significant); *Young v. Astrue*, 519 F. A'ppx. 769, 772 (3d Cir. 2013) (finding "testimony from the [VE] that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers" in a case when the VE had also testified to the number of jobs available locally); *Gutierrez*, 740 F.3d at 529 (holding that 25,000 jobs in the national economy was a close call); *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649–50 (10th Cir. 2020) (finding plaintiff did not establish 20,500 to 22,000 jobs nationally was a very limited number of jobs).

Given that the Eighth Circuit has emphasized the flexibility of the district court's review of ALJ decisions, *see Hall*, 109 F.3d at 1259 (8th Cir. 1997) (leaving to "the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation"), the Court declines to impose a *per se* rule that ALJs are required to examine whether jobs exist in the local economy, if they have identified significant numbers of jobs in the national economy.  A regional breakdown may be necessary, however, if the number of jobs nationally is insufficiently large.

In this case, the ALJ identified only a total of 18,000 jobs in the national economy and did not evaluate whether any of those jobs existed in the local or regional economies.  (*See* R. 23, identifying printed circuit board taper (4,000 jobs nationally), assembler (6,000 jobs nationally),

and printed circuit board screener (8,000 jobs nationally) as jobs Plaintiff could perform.) The VE noted that these were merely "representative examples" of "sedentary, unskilled jobs in the DOT in the national economy" that would fit Plaintiff's hypothetical RFC (R. 54–55), and the ALJ relied on that representation in finding Plaintiff not disabled (*see* R. 23). But there is no evidence in the record regarding any other representative occupations Plaintiff might be able to perform.

Although this is a close case, the Court finds insufficient evidence in the existing record to conclude the Commissioner has met her burden at step five. *See Karen E. v. Kijakazi*, 21-cv-3015 CJW-MAR, 2022 WL 17548642, *8 (N.D. Iowa Sept. 15, 2022) (finding 18,000 in the national economy insufficient when the ALJ did not identify any jobs at the regional level). "[T]he ALJ must ensure 'jobs that exist only in very limited numbers in relatively few locations outside the region where [claimant] lives' are *not* used in determining the existence of work." *Id.* (quoting 20 C.F.R. § 404.1566(b) (2022)). In this case no record exists regarding the number of jobs available in Plaintiff's region, the Commissioner has proffered no evidence regarding any other representative occupations she might be able to perform, and the number of jobs in the national economy identified in the ALJ's opinion is borderline. The Court accordingly remands the ALJ's determination with directions to supplement the record on this issue.

**D.    Step Two Errors**

Plaintiff's final argument is that the ALJ committed legal errors by: (1) not assessing osteoporosis as a medically determinable impairment; and (2) finding her anxiety to be non-severe. It is Plaintiff's burden to show a severe impairment, though the burden at step two of the analysis is "not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Although severity is not an onerous requirement, "it is also not a toothless standard, and [the Eighth Circuit has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing."

*Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (collecting cases). A severe impairment is one that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c). By contrast, an impairment that is not severe establishes "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28. "Numerous district courts in the District of Minnesota, and other districts in the Eighth Circuit, have held that an ALJ's failure to consider an impairment at step two is harmless error if the ALJ considered the effects of the impairment at step two or at later stages of the evaluation process." *Kendrick B. v. Kijakazi*, 21-cv-0068 (JFD), 2022 WL 2670052, at *4 (D. Minn. July 11, 2022) (collecting cases). In other words, "if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process[,]" the error is harmless. *Coleman v. Astrue*, 4:11-cv-2131 (CDP), 2013 WL 665084, at *10 (E.D. Mo. Feb. 25, 2013) (citing *Matlock ex rel. D.S. v. Astrue*, 4:11-cv-1322 (FRB), 2012 WL 4109292, at *11 (E.D. Mo. Sep. 19, 2012). However, when an ALJ fails to find an impairment severe at step two, and then fails to consider the effects of the impairment in Plaintiff's RFC, the omission constitutes reversible error. *Steel v. Kijakazi*, 21-cv-2105, 2022 WL 1696030, at *3 (W.D. Ark. May 26, 2022).

The Court finds there is substantial evidence in the record to support the ALJ's determination that Plaintiff's anxiety was non-severe. The ALJ noted that Plaintiff was diagnosed with anxiety and received medication management for her symptoms commensurate with her breast cancer diagnosis. (R. 15.) But Plaintiff did not have any ongoing mental health treatment after the alleged onset date for anxiety, and the state agency psychological consultants both found this impairment was non-severe. (*Id.*) The ALJ found these opinions to be persuasive and Plaintiff

does not challenge that finding.  Since the ALJ's finding was based on: (1) evidence that Plaintiff was not receiving any ongoing treatment for her anxiety; and (2) the opinions of two psychological experts who examined her longitudinal medical records, the Court concludes substantial evidence supports the ALJ's determination that her anxiety is non-severe.

The ALJ did not discuss Plaintiff's osteoporosis at step two, however, and thus made no finding as to whether it is a medically determinable impairment.  Though Plaintiff did not include this impairment in her initial application because she was diagnosed with it later, it was part of the administrative record at the time of her hearing. (*See* R. 35, arguing her recent diagnosis with osteoporosis would limit her physical activity; R. 771-72, December 23, 2020 medical chart diagnosing Plaintiff with osteoporosis and osteopenia.)  The Court reaches no conclusions about whether Plaintiff's osteoporosis is a medically determinable impairment, and if so, whether it is "severe."  But the Court finds the ALJ's opinion deficient in that it fails to consider or discuss the diagnosis at all.   Moreover, this omission was not remedied by the ALJ's analysis at step four since she did not consider the effects of osteoporosis in her determination of Plaintiff's RFC.  The Court accordingly finds this error is not harmless and directs the ALJ to consider on remand whether Plaintiff's osteoporosis is a medically determinable impairment; if so, whether it is severe or non-severe; and the manner—if at all—in which it might affect Plaintiff's RFC.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.    Plaintiff's Motion for Summary Judgement (ECF No. [12]) is **GRANTED IN PART** and **DENIED IN PART**;

      a.   The Commissioner's denial of benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order;

      b.   Plaintiff's Motion for Summary Judgment (ECF No. [12]) is **DENIED** in all other respects; and

2.   The Commissioner's Motion for Summary Judgment (ECF No. [14]) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: September 19, 2023

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge